**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KINTA SMALL,** | : | **Civil No. 3:13-CV-839** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN COLVIN, ACTING** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM  OPINION**

**I.**     **Statement of Facts and of the Case**

    **A.**     **Introduction**

In this case we are asked to evaluate an Administrative Law Judge's (ALJ) decision denying social security disability benefits to the plaintiff, Kinta Small, a 39 year old man from Carlisle, Pennsylvania, who suffers from diabetes mellitus, peripheral neuropathy, carpal tunnel syndrome, and some mental health challenges. In Mr. Small's case, the ALJ's decision was made against a factual backdrop marked by conflicting evidence relating to the nature, severity and disabling effect of Mr. Small's emotional and medical conditions.  Much of this evidence, and in some respects the testimony of the claimant Mr. Small, actually seemed to contradict and

undermine this disability claim. In other instances, the evidence suggested that Mr.
Small's condition was aggravated, or otherwise remained uncontrolled, due to Mr.
Small's failure to comply with his treatment regimen prescribed by medical providers.
Upon consideration of this evidence, for the reasons set forth below, we conclude that
the ALJ's thorough decision is supported by substantial evidence which is adequately
explained on the record and, therefore, this decision will be affirmed.

### B. <u>Small's Medical and Employment History</u>

On June 17, 2008, Small filed a claim for Title II disability benefits, and a
claim for Supplemental Security Income (SSI) benefits, both alleging an onset date
of November 1, 2006, claiming total disability resulting from diabetes, depression,
and pain. The plaintiff subsequently amended his alleged onset disability date to May
22, 2008. (Tr. 48, 101-02, 318.) A hearing on the claim was initially held on October
6, 2009, resulting in an unfavorable decision by ALJ David Gerard of the Harrisburg,
Pennsylvania Office of Disability Adjudication and Review. (Tr. 106.) The plaintiff
requested review of the decision by the Appeals Council, which remanded the case
on March 23, 2011, for further consideration. (Tr. 134.) Thereafter, a second hearing
was held on August 10, 2011, this time before a new ALJ, Daniel Myers. ALJ Myers
issued an unfavorable decision on September 6, 2011. (Tr. 17.) The Appeals Council

denied the plaintiff's request for review on March 5, 2013, and the plaintiff thereafter initiated this action on April 3, 2013.

Kinta Small was born on December 3, 1971, was 39 years old at the time of the ALJ's adverse decision, and, therefore, considered a "younger individual" under applicable regulations.  20 C.F.R. §§ 404.1563(c), 416.963(c).  He attended high school through the 10th grade, when he dropped out of school.  He has past work experience as a construction worker, warehouse laborer, forklift operator, and an automobile detailer.  (Tr. 34, 376.)  He has eight children, ranging in age from two to 19, none of whom live with him.  (Tr. 53.)

The plaintiff suffers from diabetes that is poorly controlled, as well as depression and pain.  (Tr. 318.)  Mr. Small testified at the hearing that he no longer drives because he cannot feel the pedals due to numbness in his feet, and because he experiences pain when he grips the steering wheel.  (Tr. 52.)  He testified that he has pursued mental health treatment, at least in part because his primary family doctor, Louis Hieb, D.O., believed that getting the plaintiff's depression under control would help him to better control his diabetes – something that has been a problem for an extended period of time.  (Tr. 55.)

The plaintiff testified that he has tried to modify his diet in order to help control his diabetes, and has discontinued using alcohol for two years prior to the hearings

3

in this case.  However, evidence suggested that the plaintiff's diabetes remains significantly undercontrolled, and the plaintiff's blood sugar levels taken the night before the second hearing before the ALJ revealed a reading of 570 – far above the a normal blood-sugar level of between 70 and 140.  (Tr. 64, 703.)  The plaintiff testified that he experiences depression, anger and crying spells as a result of his struggles to control his blood sugar.  (Tr. 71-72.)  According to the plaintiff, he is calm when his blood sugar is low, but if it becomes elevated he becomes agitated and occasionally aggressive.  (Tr. 72.)  According to the plaintiff, as a result of his diabetes and neuropathy, he elevates his legs while sleeping, and spends between eight and nine hours a day in a recliner.  (Tr. 73.)

The plaintiff lives with his mother and his stepfather, and has done so for the past six years.  (Tr. 51, 56.)  The plaintiff submitted forms in support of his application for Social Security benefits in which he represented that at home he prepares his own meals, (Tr. 328.), goes outside for fresh air (Tr. 326.), goes shopping on his own (Tr. 329, 369.), goes out alone at times (Tr. 329.), talks on the phone periodically during the week, (Tr. 330.), and occasionally transports himself places by car and bicycle.  (Tr. 369.)  The plaintiff's mother also indicated that he drives a car and can go out alone.  (Tr. 392.)  In contrast to other evidence in the record suggesting that the plaintiff is dependent upon others to prepare his meals, his mother

4

indicated in April 2010 that he shops for his own food and prepares simple meals, and cares for himself.  (Tr. 390-392.)  The plaintiff's mother indicated that he attends family functions and spends time with some of his eight children when he can, and has a few social friends that he sees.  (Tr. 393.)  The plaintiff claims that he relies substantially upon his mother to perform household chores, including doing the laundry and cleaning, and that he only helps when asked.  (Tr. 368.)

## C.   Treating and Examining Source Statements

In July 2009, Dr. Hieb, the plaintiff's treating physician, completed a medical source statement indicating that the plaintiff was able to engage in the following activities:  lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing or walking at least two hours in an eight-hour work day; sitting without restriction; pushing or pulling on a limited basis with all extremities; performing all postural movements occasionally, but balancing frequently; handling objects occasionally; and tolerating exposure to temperature extremes, dust, and other environmental irritants on only a limited basis.  (Tr. 504-07.)

Curiously, in contrast to this detailed statement, earlier in April 2009, Dr. Hieb completed a separate form for the Franklin County Department of Domestic Relations in which he indicated that the plaintiff had been "totally disabled" since February 2006.  (Tr. 456.)  This form was followed by another from Dr. Hieb in October 2010

in which he again indicated that the plaintiff was "fully disabled", since sometime in "?July 05" [sic].  (Tr. 913.)

In October 2010, Ronald Vandegriff, D.O., examined the plaintiff.  (Tr. 710-719.)  During that examination, the plaintiff reported that he was unable to work due to pain in his "knees, ankles, wrists, feet, and arms."  (Tr. 710.)  The plaintiff also claimed that he suffered from carpal tunnel syndrome, but that his surgeon was waiting to operate until after the plaintiff's blood sugar was being controlled adequately.  (Tr. 711.)  During this examination, the plaintiff admitted to smoking a pack of cigarettes a day, but denied using alcohol or street drugs.  (Tr. 711.)

Dr. Vandegriff observed that the plaintiff was capable of walking unassisted to and from the examination table, without any difficulty.  (Tr. 712.)  During the visit, the plaintiff's blood pressure was normal, and his lungs were found to be clear.  The plaintiff had no normal range of motion in all joints, with strong distal pulses and full sensation throughout his entire leg.  (Tr. 712, 716.)  During the examination, the plaintiff was found to be fully oriented, cooperative, answered questions appropriately, and maintained good eye contact.  (Tr. 712-13.)  Dr. Vandegriff found that Small's speech quality and quantity were normal, although he appeared anxious.  (Tr. 713.)  An x-ray of the plaintiff's right knee was normal.  (Tr. 712.)

Following this examination, Dr. Vandegriff diagnosed the plaintiff with type 1 diabetes, uncontrolled by history, polyarthralgia, right knee worse; depression; and carpal tunnel syndrome in both hands.  (Tr. 713.)  Dr. Vandegriff recommended that the plaintiff be seen by an endocrinologist on a regular basis until his blood sugars were brought under control, and that he should have lab work performed, including a hemoglobin A1C and urinalysis, every four months.   Additionally, it was recommended that the plaintiff pursue treatment with a psychiatrist and therapist on a regular basis.  (Tr. 713.)

In addition to making the foregoing recommendations regarding the plaintiff's ongoing treatment, Dr. Vandegriff completed a medical source statement in which he indicated that the plaintiff retained the ability to lift and carry 10 pounds frequently, stand and walk four hours in an eight-hour work day, sit eight hours with a sit/stand option, with an unlimited ability to push and pull.  (Tr. 714-15.)  Dr. Vandegriff also recommended that the plaintiff be restricted from heights and could never balance or crawl, but also noted that the plaintiff could frequently bend, occasionally kneel, stoop and crouch.  (Tr. 715.)

### D.   Consultative Psychologist

In August 2010, Stanley E. Schneider, Ed.D., examined the plaintiff.  (Tr. 669-78.)  The plaintiff drove himself to the examination.  (Tr. 670.)  Like Dr. Vandegriff,

Dr. Schneider found the plaintiff to be generally cooperative and self-sufficient, but that he also presented agitated and exhibited quite a bit of nervous energy as the interview proceeded.  (Tr. 670.)  During this examination, the plaintiff told Dr. Schneider that he had a difficult childhood, and that he had spent time in juvenile detention and experienced abuse by his stepfather.  (Tr. 670.)  The plaintiff also told Dr. Schneider that he had spent "a couple of years" in jail, including most recently in 2009.  (Tr. 670.)  The plaintiff acknowledged a long history of alcohol and drug abuse, but stated that he stopped using drugs two years prior to this examination, and stopped drinking alcohol in December 2008.  (Tr. 672.)  The plaintiff also, perhaps exaggerating, told Dr. Schneider that he had held between 50 and 100 jobs during his life, but that he would routinely either abandon his employment or get fired.  (Tr. 672.)

During this mental status examination, the plaintiff's speech was found to be relevant, oriented and goal-directed.  (Tr. 673.)  Dr. Schneider assessed the plaintiff's mood as agitated and depressed.  (Tr. 673.)  He became increasingly agitated as the examination progressed.  (Tr. 673.)  Whereas the plaintiff denied suicidal and homicidal thinking to Dr. Vandegriff, during his examination with Dr. Schneider he reported recurrent suicidal thinking without any intent or plan, as well as homicidal ideation, but did not identify any specific person.  (Tr. 673.)

8

He was able to identify similarities between seemingly dissimilar items, and interpret simple proverbs. (Tr. 673.)  He was capable of performing serial 5's, and was able to repeat four digits forward acceptably, though he had some trouble with repeating three digits backwards.  Dr. Schneider thus observed some impairment with respect to the plaintiff's attention and concentration. (Tr. 673.)

Dr. Schneider determined that the plaintiff had impulse control problems, and mild impairment with respect to judgment, though his insight was acceptable.  Dr. Schneider diagnosed the plaintiff with major depressive disorder, recurrent moderate, based upon the plaintiff's report that he had been depressed as a child, and anxiety, not otherwise specified, secondary to his medical condition. (Tr. 674.) Dr. Schneider opined that the plaintiff was "moderately" limited in his ability to carry out short, simple, detailed instructions, make judgment and simple decisions, and interact appropriately with supervisors and colleagues. (Tr. 677.)  Dr. Schneider concluded that the plaintiff had "marked" limitations in understanding and remembering short and simple instructions, and in interacting with the public. (Tr. 677.)  Additionally, Dr. Schneider determined that the plaintiff had "marked to extreme" limitations in carrying out detailed instructions, and in responding appropriately to work pressures and changes in routine work setting. (Tr. 677.)

9

### E.    State Agency Psychologist

In August 2008, Carl Sebastianelli, M.A., a state agency psychologist reviewed the plaintiff's medical evidence and opined that the plaintiff was not significantly impaired or limited in most areas of mental work functioning, but found that the plaintiff did have moderate limitations in terms of understanding, remembering and carrying out detailed instructions and maintaining concentration and attention for extended periods. (Tr. 447-48.) However, the state agency psychologist opined that the plaintiff had the ability to meet the mental demands of competitive work on a sustained basis. (Tr. 449.)

### F.    Testimony of Vocational Expert

During the administrative hearing in this matter held in August 2011, the plaintiff testified, as did a vocational expert (VE). (Tr. 44-100.) The VE testified that the plaintiff has past work as a construction worker, warehouse laborer, forklift operator, and an automobile detailer. (Tr. 78, 80, 82.) The ALJ asked the VE to consider the plaintiff's age, education, and work experience with a number of specific limitations, including the following: lifting and carrying 20 pounds occasionally, 10 pounds frequently; standing and walking up to two hours; sitting up to eight hours; pushing and pulling with all extremities only occasionally; climbing, kneeling, crouching, crawling and stooping occasionally; balancing frequently; handling only

occasionally; avoiding extreme temperatures, dust, fumes, odors, chemicals and gases; and never using foot pedals, which is something that the plaintiff specifically said he could not due owing to the neuropathy in his feet. (Tr. 89.)

In addition to these physical limitations, the ALJ directed the VE to consider the following mental limitations: understanding, remembering and carrying out only simple instructions; exercising only simple work-related judgments; involving only occasional changes in a routine work setting; only occasional interaction with the public and co-workers; and no high-paced production or piece work. (Tr. 89.)

On the basis of these hypothetical restrictions, the VE identified the unskilled, light-work positions of bakery worker and machine tender/semiconductor bonder, as well as sedentary, unskilled position of surveillance system monitor as work that a hypothetical individual with the noted limitations could perform, and that existed in significant numbers in the national economy. (Tr. 90-92.) The VE stated that such an employee could perform these jobs even with 15% reduced attention and concentration, but noted that an employee could not perform these jobs if his attention and concentration were reduced by 20% as opposed to 15%. The VE also testified that if the plaintiff needed a job where he could sit or stand at will, the bakery option would be eliminated, but this restriction would not effect the hypothetical employee's ability to engage in the other positions identified. (Tr. 94.)

11

G.   **The ALJ's Decision**

In his written decision issued September 6, 2011, the ALJ concluded that the plaintiff was not fully disabled as the result of the severe and medically determinable physical and mental impairments, including insulin dependent diabetes mellitus, bilateral lower extremity diabetic peripheral neuropathy, bilateral carpal tunnel syndrome, affective disorder and anxiety disorder.   The ALJ found that these impairments were severe, but nevertheless concluded based upon a review of the testimony, opinions of medical professionals, and medical evidence in the record that the plaintiff had the residual functional capacity to perform light work with a number of specific exertional and non-exertional limitations.   The ALJ further found that with this residual functional capacity, there were jobs existing in sufficient numbers in the national economy that the plaintiff could reasonably be expected to be able to perform, and, therefore, denied his request for disability benefits and SSI benefits. (Tr. 20-37.)

II.   **Summary of the Plaintiff's Claims in this Appeal**

In this appeal, the plaintiff claims that the ALJ's decision should be set aside, and remanded for further consideration for a number of substantially overlapping reasons.

First, the plaintiff argues that the ALJ erred in finding that the plaintiff was not entitled to disability benefits because he was non-compliant with medical treatment and the advice of his medical providers.  With respect to this particular objection, however, we are constrained to note as an initial matter that the ALJ did not deny the plaintiff's claims for failing to follow prescribed treatment; instead the ALJ considered this evidence of noncompliance when assessing the overall weight of the evidence and its bearing upon the plaintiff's credibility.  The plaintiff also challenges the ALJ's overall assessment of his credibility based upon his evaluation of the entire record in the case.

Next, the plaintiff contends that the ALJ erred in his evaluation of the medical opinions submitted in this case.  Specifically, the plaintiff argues that the ALJ's rejection of the conclusory opinion of Dr. Hieb that the plaintiff was totally disabled and functionally unable to hold a job was error.  Notably, in making this argument, the plaintiff seems to be focused on isolated opinions that Dr. Hieb gave in state domestic relations proceedings with respect to another matter, which differed markedly from the detailed and nuanced opinion that he rendered in connection with these disability proceedings, and in which he concluded that the plaintiff was capable of performing a limited range of light work.  Likewise, the plaintiff asserts that the ALJ erred in his consideration of the opinion of Dr. Schneider, the consultative

examiner who concluded that the plaintiff's mental impairments precluded him from engaging in any work.

Following a thorough review of the entire record taken during these proceedings, we find no merit to the plaintiff's arguments regarding the ALJ's decision, and find that the ALJ's decision to deny the plaintiff's claim for benefits was supported by substantial evidence and will be upheld.

## III.   <u>Discussion</u>

### A.   <u>Standards of Review–The Roles of the Administrative Law Judge and This Court</u>

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the Administrative Law Judge and this Court.  At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits.  See 20 C.F.R. § 404.1520.  See also Plummer  v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  See 20 C.F.R. § 404.1520.  As part of this analysis the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  See 20 C.F.R. § 404.1520.

This disability determination also involves shifting burdens of proof. The initial burden rests with the claimant in steps 1 through 4 to demonstrate that he is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court

applies a specific, well-settled and carefully articulated standard of review.  In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence.  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)."  Johnson, 529 F.3d at 200.  See also  Pierce v. Underwood, 487 U.S. 552 (1988).  It is less than a preponderance of the evidence but more than a mere scintilla of proof.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

17

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### B.    The ALJ's Decision Was Supported By Substantial Evidence

Judged against this deferential standard of review we find that the ALJ's disability decision in this case was supported by "substantial evidence" and, therefore, may not now be disturbed.  Indeed, given the many conflicting and contradictory threads in the evidence presented to the ALJ, this ruling reflects a thorough, careful, balanced analysis of the proof.  It is, therefore, the paradigm of a decision which draws carefully upon substantial evidence.

Having reached this conclusion, we discuss the separate claims of error advanced by Small in this appeal.

### C.    The ALJ's Evaluation of the Plaintiff's Non-Compliance with Treatment and Assessment of the Plaintiff's Credibility

The plaintiff's initial argument appears to be that the ALJ improperly relied on a finding that the plaintiff failed to follow prescribed treatment as a basis to deny his claims for benefits.  To the extent that this is the plaintiff's argument, it is meritless, since the ALJ did not deny the plaintiff's claims for failing to follow prescribed treatment.  To the contrary, the ALJ's decision makes clear that he considered the plaintiff's failure to follow treatment recommendations from his doctors and medical providers as one of several different factors that bore upon the plaintiff's credibility with respect to his numerous subjective complaints, which is something that was not

only sensible on the facts of this case, but is further required of the ALJ in his evaluation of the plaintiff's medication, treatment, and its effectiveness. 20 C.F.R. §§ 404.1529, 416.929. Thus, the ALJ's assessment of this information was not only appropriate, but exhibited careful consideration of a record that contained numerous relevant pieces of information that had a bearing upon the plaintiff's credibility.

The plaintiff's manifest noncompliance with his treatment and diet regimen was relevant to this assessment. See Vega v. Comm'r of Social Sec., 358 F. App'x 372, 375 (3d Cir. 2009) ("Viewed in the context of the ALJ's findings as a whole, his reference to Vega's noncompliance shows that he treated it as a factor in analyzing the credibility of Vega's testimony. Because an ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good reason, this was not improper.") (internal citation omitted). Accordingly, because the ALJ's assessment of the plaintiff's noncompliance was done in the context of assessing his credibility, rather than as a basis to deny benefits, we find no error. See Hawkins v. Astrue, No. 3:09-CV-2094-BD, 2011 WL 1107205, at *3 (N.D. Tex. Mar. 25, 2011) ("Because the ALJ considered plaintiff's failure to take prescribed medications only in assessing her credibility, and not in determining whether she would be able to work

had she followed her medication regime, the judge was not required to follow the procedures set forth in . . . SSR 82-59.").[1]

Furthermore, the evidence did show that the plaintiff's blood sugar remained significantly uncontrolled, and evidence indicating significant non-compliance on the plaintiff's part was strewn throughout the record.  Thus, the plaintiff's primary doctor, Dr. Hieb, observed that the plaintiff was "fairly noncompliant" and "pretty much noncompliant," and at other times flatly declared that the plaintiff "is not compliant" with his treatment regimen.  (Tr. 776, 884, 892.)  The plaintiff's treatment providers routinely expressed concern over the plaintiff's failure to take his medication and adhere to a diabetic diet.  Thus, despite the plaintiff's assurances that he was complying with his medications, Dr. Hieb found this to be "unclear".  (Tr. 779.)  A nurse practitioner found that the plaintiff had been taking his insulin improperly in April 2010.  (Tr. 542.)

---

[1] In his brief, Small suggests that he is challenging the ALJ's decision, in part, for failing to follow SSR 82-59.  This ruling prescribes certain requirements upon an ALJ before the ALJ may properly deny benefits based on the claimant's failure to follow treatment.  SSR 82-59.  However, this ruling is inapplicable, because the ALJ did not deny benefits based on the plaintiff's noncompliance. Thus, Small's "citation to SSR 82-59 here is misplaced, as the Third Circuit has held that this regulation only applies to claimants who would otherwise be found to be under disability and for whom treatment is expected to restore the ability to work." Smith v. Astrue, 961 F. Supp. 2d 620, 652 n.17 (D. Del. 2013) (citing Vega, 358 F. App'x at 375; Thomas v. Barnhart, No. Civ. A. 02-2958, 2003 WL 21419154, at *5 (E.D. Pa. June 11, 2003)).

With respect to the plaintiff's adherence to a diabetic diet, Dr. Hieb found that a "main problem" for the plaintiff was stabilizing his diet – something that Dr. Hieb assessed as being "all over the place." (Tr. 616.) The record contains numerous instances of providers finding that the plaintiff had failed to maintain an adequate diet to control his blood sugar. Thus, following a blood sugar reading of 501 in August 2009, it was determined that the plaintiff had just consumed "a hotdog, chips and apple pie." (Tr. 546.) In October 2010, after the plaintiff was hospitalized for high blood sugar, providers noted that the plaintiff had not been maintaining an insulin and diet regimen. (Tr. 827, 848.)

In addition, the plaintiff had been discharged from mental health treatment because he failed to attend treatment. (Tr. 29-30.) The plaintiff was warned that he would be discharged from physical therapy due to noncompliance unless his attendance improved, since he had attended only two out of eleven scheduled appointments. (Tr. 481, 525.)

Again, the ALJ did not deny the plaintiff benefits because of his frequent and repeated noncompliance with treatment, medication, and diet regimens. However, the ALJ did consider the plaintiff's noncompliance as one relevant factor among others in determining that the plaintiff's claimed symptoms were not as severe as he alleged. (Tr. 28-31.) This conclusion was necessarily informed by the ALJ's assessment of the

plaintiff's credibility, and the ALJ reasonably considered the plaintiff's noncompliance when considering whether the plaintiff's subjective complaints of pain were, in fact, credible.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i-vii).

As the fact finder, the ALJ has an obligation to weigh all the facts and evidence of record and may accept or reject evidence if she explains her reasons for doing so. Plummer, 186 F.3d at 429.  "This includes crediting or discounting a claimant's complaints of pain and/or subjective description of the limitations caused by his or her impairments."  Natale v. Comm'r of Soc. Sec., 651 F. Supp. 2d 434, 448 (W.D. Pa. 2009) (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); see also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  Moreover, where the findings of the Commissioner are supported by substantial evidence, a reviewing court is bound by those findings, even if the court would have decided a particular issue differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

The Social Security Administration's regulations and rulings provide further guidance in this field.  An ALJ is obligated to assess the credibility of a claimant's subjective complaints about the extent of his functional limitations in the context of the objective medical evidence of record and other factors, including the claimant's treatment history, medications, work history, and daily activities.  20 C.F.R. § 416.929(c); SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996).

23

In making his assessment, the ALJ considered the plaintiff's medical treatment, his medication regimen, and other measures that his providers has prescribed to relieve his pain. (Tr. 28-32.) The ALJ observed that the plaintiff's medical treatment was not consistent with what would have been expected if the plaintiff was as limited as he claimed to be. (Tr. 30.) With respect to mental health treatment, the ALJ noted that the plaintiff had not undergone psychiatric hospitalization, or other outpatient therapeutic treatment that would have been appropriate for someone trying to manage a significant mental health disorder. (Tr. 30.) Instead, the ALJ noted that the plaintiff had only briefly attended outpatient therapy from April 2009 through January 2010, but was discharged due to his failure to comply with treatment. (Tr. 30, 606, 613, 729-37.) Moreover, rather than seeking treatment from mental health professionals, the plaintiff's mental health treatment was largely limited to taking psychotropic medications that had been prescribed by his primary care doctor; a fact that in part led the ALJ to conclude that "[t]he minimal degree of treatment, in combination with documented noncompliance with basic outpatient therapy, strongly suggests that Plaintiff's mental health disorders are not as severe as alleged." (Tr. 30.) Rather than suggesting that the ALJ's assessment was not based on substantial evidence, the opinion that the ALJ rendered shows a careful evaluation of myriad facts that bore upon the plaintiff's overall credibility, including his noncompliance with treatment

24

and the limited scope of that treatment.  These factors were certainly relevant to the ALJ's overall assessment of the plaintiff's credibility with respect to the extent of his physical and mental limitations, and thus we find no error with the ALJ's evaluation of this evidence.

Likewise, the ALJ considered numerous other factors when evaluating the plaintiff's credibility.  Thus, the ALJ considered the plaintiff's activities of daily living, which included evidence that showed the plaintiff cooked simple meals, shopped, occasionally drove, and left his home unaccompanied by others.  (Tr. 31, 368-69, 391-92.), and noted that the record contained evidence showing that the plaintiff had interpersonal relationships with family and others, including recent romantic relationships, that further cast doubt on his assertions regarding the extent of his limitations.  Likewise, the ALJ noted that the plaintiff had worked only sporadically prior to his alleged onset date of disability, which raised questions about whether the plaintiff's ongoing unemployment was due to medical impairments or some other factor.  (Tr. 31, 291, 304, 306, 376.)  These factors were all relevant to the ALJ's assessment of the plaintiff's credibility, and there is no error in the ALJ's credibility determination based upon a consideration of this evidence.

## D.  The ALJ's Evaluation of the Medical Opinions Was Proper

Next, the plaintiff argues that the ALJ failed adequately to consider and evaluate the evidence submitted by Drs. Hieb and Schneider, which the plaintiff suggests should have led the ALJ to find that he was totally disabled.  We disagree.

As an initial matter, and as the Commissioner rightly emphasizes, to the extent that the plaintiff is attempting to rely upon evidence to challenge the ALJ's decision that was never provided to the ALJ, but was instead belatedly submitted to the Appeals Council, this evidence cannot be considered as part of this appeal.  See Matthews v. Apfel, 239 F.3d 589 (3d Cir. 2001).  Instead, the ALJ's decision is only reviewable based upon evidence that was actually submitted to the ALJ at the time that he rendered his decision.  Id. at 593.  Although there are some cases where remand may be appropriate pursuant to the sixth sentence of 42 U.S.C. § 405(g) so that new evidence may be considered that was previously unavailable, the plaintiff has not attempted to show that a sixth sentence remand is appropriate, and we find no basis upon which remand would be warranted here.  Instead, the plaintiff has simply attempted to rely upon evidence that was never before the ALJ in arguing that the ALJ's decision was unsupported by substantial evidence.  This is improper.

Turning to the plaintiff's substantive arguments, he first contends that the ALJ improperly gave more weight to Dr. Hieb's detailed medical source statement

submitted in connection with these proceedings instead of relying upon the conclusory letters of disability that Dr. Hieb provided in connection with certain domestic relations proceedings that the plaintiff had in Franklin County. However, the ALJ adequately explained the reasons for his treatment of Dr. Hieb's somewhat contradictory statements. First, regarding Dr. Hieb's unexplained assertion that the plaintiff was, at one time, totally disabled, the ALJ properly discounted this conclusion because it was an opinion about a matter that is reserved exclusively to the Commissioner, and, therefore, not entitled to any deference. (Tr. 31-32); see 20 C.F.R. §§ 404.1527(d), 416.927(d) (providing that the opinion that a claimant is disabled or unable to work is reserved to the Commissioner and not entitled to special significance). The law thus clearly supports the ALJ's decision to give Dr. Hieb's conclusory opinion of disability "little weight". (Tr. 31-32.)

In contrast, the ALJ gave significant weight to Dr. Hieb's more detailed and more recent July 2009 medical source statement, which had indicated that the plaintiff was capable of performing a limited range of light work. (Tr. 32.) In that opinion, Dr. Hieb opined that the plaintiff could engage in the following activities:  lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing or walking at least two hours in an eight-hour work day; sitting without restriction; pushing or pulling on a limited basis with all extremities; performing all postural movements

occasionally, but balancing frequently; handling objects occasionally; and tolerating exposure to temperature extremes, dust, and other environmental irritants on only a limited basis. (Tr. 504-07.)

Likewise, if the plaintiff is asserting that the ALJ's decision was improper because it appears to place substantial reliance two inconsistent opinions, those being the opinions of Dr. Vandegriff and Dr. Hieb, we find this argument meritless. Although there are discrepancies in the ultimate opinions rendered by both of these medical professionals, any fair reading of them reveals that Dr. Vandegriff's opinion is only slightly less restrictive than the opinion of Dr. Hieb, the plaintiff's treating physician.

But harmonizing the opinions is an unnecessary exercise in any event because the ALJ did not embrace Dr. Vandegriff's opinion entirely, but instead gave it "significant weight". Furthermore, in determining the plaintiff's residual functional capacity, it is clear that the ALJ gave the plaintiff the benefit, and determined that the plaintiff had functional limitations that were in line with those identified in Dr. Hieb's more restrictive opinion, rather than the somewhat less restrictive opinion given by Dr. Vandegriff. (Tr. 27.)

The plaintiff also challenges the ALJ's treatment of the opinion rendered by Dr. Schneider, the consultative examiner. The ALJ's opinion, however, shows that he

considered Dr. Schneider's opinion, but gave it somewhat less weight because Dr. Schneider had only seen the plaintiff one time, and his opinion based on this single occasion drew heavily from the plaintiff's own subjective statements, which were not entirely accurate.  (Tr. 33; see also Tr. 677 (indicating that Dr. Schneider relied upon many of the plaintiff's subjective statements to support his ultimate opinion regarding the extent of the plaintiff's limitations.)  Moreover, the ALJ noted that Dr. Schneider's opinion was not consistent with his own examination findings, which on their own did not indicate that the plaintiff's level of impairment was the same as that reflected in Dr. Schneider's opinion.  (Tr. 33.)  Thus, the ALJ properly evaluated the information provided by Dr. Schneider, and appropriately explained that the opinion was being discounted somewhat because it was not supported by medical evidence.  See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (the weight given a medical opinion depends upon the extent to which that opinion is supported by medical evidence or clinical findings).

Although Dr. Schneider found the plaintiff to be credible and reliable in describing his conditions (Tr. 674.), there are numerous instances in the record that cast doubt upon this assessment.  Thus, as the defendant points out, the plaintiff reported to Dr. Schneider that he had homicidal and suicidal ideation, where as he had denied such thinking to Dr. Vandegriff and to other mental health care providers on

29

multiple occasions.  (Tr. 673, 713, 730-37, 873.)  Likewise, whereas Dr. Schneider

accepted the plaintiff's contention that he engaged in few activities of daily living, did

not shop and has no social friends (Tr. 674-75.), other evidence is to the contrary.

Thus, the record indicates that the plaintiff did have at least one friend (Tr. 58.), and

may have had "a few" (Tr. 393.), he had multiple romantic relationships including as

recently at November 2009 (Tr. 59, 558, 561.), and does his own shopping.  (Tr. 329,

369, 392.)  These noted inconsistencies certainly provide a legitimate basis for the

ALJ to have discounted somewhat Dr. Schneider's opinion, and to give that opinion

less weight, since Dr. Schneider had placed such substantial reliance upon the

plaintiff's subjective statements, which in numerous instances were contradicted by

other record evidence.  See 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) (the

weight given to a medical opinion depends upon the extent to which the opinion is

supported with examination findings and is consistent with other evidence of record).

Having found that the ALJ reasonably discounted the weight given to Dr.

Schneider's opinion, we also find that the ALJ's decision to rely more heavily on the

opinion of Carl Sebastianelli, M.A., the state agency psychologist, was supported and

proper.  Sebastianelli found that the plaintiff was not significantly impaired or limited

with respect to most areas of mental work functioning, but did have moderate

limitations with respect to understanding, remembering and carrying out detailed

instructions and maintaining concentration and attention for extended periods. (Tr. 447-48.) This psychologist also found that the plaintiff could meet the mental demands of competitive employment on an ongoing basis. (Tr. 449.) The ALJ's reliance upon this "highly qualified" opinion evidence, 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i), was supported by the entire record of this case.

Finally, the plaintiff suggests without elaboration that the ALJ improperly failed to consider the plaintiff's mental impairments in accordance with the instruction from the Appeals Council in its decision remanding the plaintiff's first adverse decision. The record, however, makes clear that the ALJ did consider the plaintiff's mental impairments, and carefully evaluated these impairments. (Tr. 25-27, 135.) The ALJ fully considered the plaintiff's claims upon remand and, in fact, added a number of mental limitations when determining the plaintiff's residual functional capacity, such as restricting the plaintiff to work that would involve simple instructions and simple work-related decisions without high paced production or piece work, only occasional changes in the work setting, and limited interaction with the public. (Tr. 27.) We are thus unable to find any substantial basis for the plaintiff's unadorned suggestion that the ALJ failed to comply with the Appeals Council's instruction to reconsider the plaintiff's mental impairments.

IV.   **<u>CONCLUSION</u>**

For all of the foregoing reasons, upon consideration of the parties' briefs and the entire record of the administrative proceedings in this matter, and finding that the ALJ's decision to deny the plaintiff's claims for disability and SSI benefits was supported by substantial evidence, the plaintiff's claims in this action will be denied. A separate order will issue.

/*MARTIN C. CARLSON*
Martin C. Carlson
United States Magistrate Judge